# EXHIBIT 1

**Ross Boughton**

**From:**    Tammy M. Mazzullo [tammy@qualls-workman.com]
**Sent:**    Friday, March 28, 2008 10:21 AM
**To:**      Ross Boughton
**Cc:**      'Daniel H. Qualls'
**Subject:** Goldsby v. Adecco PMK Depositions

Ross,

    I just wanted to follow up with you regarding the PMK depositions. The last week in April is fine. Let me know if April 29th will work for you.

    Can you let advise how many witnesses there are so that we may determine if more than one day of examinations will be necessary.

Thank You.

Tammy

**Tammy M. Mazzullo, Legal Assistant**

**Qualls & Workman, LLP**
**244 California Street, Suite 410**
San Francisco, CA 94111
**T: (415) 782-3660**
**F: (415) 788-1028**
tammy@qualls-workman.com
www.qualls-workman.com

☺THE INFORMATION CONTAINED IN THIS EMAIL IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY ME BY REPLY EMAIL AND PERMANENTLY DELETE THE ORIGINAL MESSAGE. THANK YOU☺

**EXHIBIT 1**
**-4-**

**EXHIBIT 2**

**Ross Boughton**

| | |
|---|---|
| **From:** | Ross Boughton |
| **Sent:** | Tuesday, April 01, 2008 1:33 PM |
| **To:** | 'Tammy M. Mazzullo' |
| **Cc:** | 'Daniel H. Qualls', Charles Barker |
| **Subject:** | RE: Goldsby v. Adecco PMK Depositions |

Tammy and Dan,

There will be a single deponent for the PMK's. We are available on April 30, 2008. Does that work for your office?

-Ross

**From:** Tammy M. Mazzullo [mailto:tammy@qualls-workman.com]
**Sent:** Friday, March 28, 2008 10:21 AM
**To:** Ross Boughton
**Cc:** 'Daniel H. Qualls'
**Subject:** Goldsby v. Adecco PMK Depositions

Ross,

    I just wanted to follow up with you regarding the PMK depositions. The last week in April is fine. Let me know if April 29th will work for you.

    Can you let advise how many witnesses there are so that we may determine if more than one day of examinations will be necessary.

Thank You.

Tammy

**Tammy M. Mazzullo, Legal Assistant**

Qualls & Workman, LLP
244 California Street, Suite 410
San Francisco, CA 94111
T: (415) 782-3660
F: (415) 788-1028
tammy@qualls-workman.com
www.qualls-workman.com

☺ THE INFORMATION CONTAINED IN THIS EMAIL IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS

**EXHIBIT 2**
-5-

STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY ME BY REPLY EMAIL AND PERMANENTLY DELETE THE ORIGINAL MESSAGE. THANK YOU☺

**EXHIBIT 2**
**-6-**

# EXHIBIT 3

**Ross Boughton**

| | |
|---|---|
| **From:** | Tammy M. Mazzullo [tammy@qualls-workman.com] |
| **Sent:** | Tuesday, April 01, 2008 1:42 PM |
| **To:** | Ross Boughton |
| **Cc:** | 'Daniel H. Qualls' |
| **Subject:** | RE: Goldsby v. Adecco PMK Depositions |

Ross,

This email will confirm that we will depose Adecco's person most knowledgeable on April 30, 2008 at 10:00 a.m., in our offices on the three 30 b(6) deposition notices.

Tammy


Tammy M. Mazzullo, Legal Assistant

Qualls & Workman, LLP
244 California Street, Suite 410
San Francisco, CA 94111
T: (415) 782-3660
F: (415) 788-1028
tammy@qualls-workman.com
www.qualls-workman.com

THE INFORMATION CONTAINED IN THIS EMAIL IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY ME BY REPLY EMAIL AND PERMANENTLY DELETE THE ORIGINAL MESSAGE. THANK YOU

**From:** Ross Boughton [mailto:RBoughton@sheppardmullin.com]
**Sent:** Tuesday, April 01, 2008 1:33 PM
**To:** Tammy M. Mazzullo
**Cc:** Daniel H. Qualls; Charles Barker
**Subject:** RE: Goldsby v. Adecco PMK Depositions

Tammy and Dan,

There will be a single deponent for the PMK's. We are available on April 30, 2008. Does that work for your office?

-Ross

**EXHIBIT 3**
-7-



**SHEPPARD MULLIN**
SHEPPARD MULLIN RICHTER & HAMPTON LLP

333 South Hope Street
48th Floor
Los Angeles, CA 90071-1448
213.620.1780 main
213.620.1398 fax
*www.sheppardmullin.com*

**Ross Boughton**
213.617.4261 direct | 213.443.2714 direct fax
RBoughton@sheppardmullin.com | Bio

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Tammy M. Mazzullo [mailto:tammy@qualls-workman.com]
**Sent:** Friday, March 28, 2008 10:21 AM
**To:** Ross Boughton
**Cc:** 'Daniel H. Qualls'
**Subject:** Goldsby v. Adecco PMK Depositions

Ross,

I just wanted to follow up with you regarding the PMK depositions. The last week in April is fine. Let me know if April 29th will work for you.

Can you let advise how many witnesses there are so that we may determine if more than one day of examinations will be necessary.

Thank You.

Tammy

**Tammy M. Mazzullo, Legal Assistant**

Qualls & Workman, LLP
244 California Street, Suite 410
San Francisco, CA 94111
T: (415) 782-3660
F: (415) 788-1028
tammy@qualls-workman.com
www.qualls-workman.com

☺ THE INFORMATION CONTAINED IN THIS EMAIL IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS

**EXHIBIT 3**
-8-

STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY ME BY REPLY EMAIL AND PERMANENTLY DELETE THE ORIGINAL MESSAGE. THANK YOU☺

**EXHIBIT 3**
-9-

# EXHIBIT 4

CERTIFIED COPY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAVOTNAE GOLDSBY, AND      )
ALL OTHERS SIMILARLY        )
SITUATED,                   )
                            )
          Plaintiff,        )
                            )
vs.                         )  Case No. CV-07-5604 MMC
                            )
ADECCO, INC, and DOES 1     )
through 100, inclusive,     )
                            )
          Defendants.       )
_____)

DEPOSITION OF KIM HANS

June 4, 2008

EXHIBIT 4
-10-

CHERREE P. GAGE, CSR # 11108, RPR, CRR
✱  263579



B A R K L E Y
Court Reporters

(212) 808-8500 New York      (310) 207-8000 Los Angeles      (949) 955-0400 Irvine       (415) 433-5777 San Francisco
(702) 366-0500 Las Vegas     (858) 455-5444 San Diego        (951) 686-0606 Riverside    (818) 702-0202 Woodland Hills

1          Q.    When Adecco employees fill out time cards, do

2     they do so online?

3          A.    They can do so online.

4          Q.    Is there any other way they can fill out time

5     cards?

6          A.    We also have a telephone system that they can

7     input their time through.

8          Q.    Any other way?

9          A.    They can turn in a time card to our office,

10    they can use a punch clock or electronic timekeeping

11    system at the customer site.

12         Q.    Any other way?

13         A.    I can't think of anything.

14         Q.    What percentage of time cards are filled out

15    online?

16         A.    I don't know the exact answer to that.

17         Q.    Can you give me an estimation?

18         A.    I would not be able to give you an estimation.

19    We would have to do some research to find out.

20         Q.    Are most time cards filled out online?

21         A.    I wouldn't say most, no.  It really varies.

22         Q.    How long are time cards filled out online

23    kept?

24         A.    I don't know the exact answer to that, but we

25    can find out for you.

**EXHIBIT 4**
**-11-**

13

KIM HANS



1    individual employees?

2        A.    Yes.

3        Q.    If you wanted to know if an employee received

4    a meal period, are you able to retrieve data in the

5    system to answer the question of whether the employee

6    did receive a meal period?

7            MR. BARKER:  Objection.  Vague.  What do you

8    mean by "system"?

9            MR. QUALLS:  Fair enough.  I listen to

10    objections.  If they're vague I rephrase my questions.

11        Q.    What system is used to input time cards?  Does

12    it have a name?

13        A.    The time capture tool.  It's called our

14    individual web time card.

15        Q.    Are you able to go onto the individual web

16    time card and retrieve time card information to

17    determine if an individual employee received a meal

18    period?

19        A.    It doesn't specifically identify the meal

20    period.  It identifies the total hours.

21        Q.    Is there any data, to your knowledge, on the

22    individual web time card that enables one to determine

23    if an employee received a meal period?

24        A.    Not on the individual web time card.

25        Q.    Is there any system that enables one to

**EXHIBIT 4**
**-12-**

17

KIM HANS

BARKLEY
Court Reporters

1    determine for employees who fill out time cards using

2    Exhibit 3 whether an employee received a meal period?

3        A.    No.

4        Q.    So if you wanted to know if an individual

5    employee received a meal period for a given week worked

6    or a given day worked, there's no system that you're

7    aware of that would enable you to retrieve data to

8    determine whether the employee received a meal period?

9        A.    No.

10            MR. QUALLS:  Could you read back my question,

11    please.

12            (Whereupon the record was read as requested.)

13        Q.    BY MR. QUALLS:  To your knowledge has any such

14    system existed at Adecco since -- for the period from

15    July 2003 to the present?

16        A.    No.  There's no system.

17        Q.    Is there any means to your knowledge by which

18    you are able to retrieve employee data to determine if

19    an employee received a meal period?

20        A.    We could view the time card.

21        Q.    Let's stop right there.  How do you go about

22    viewing a time card?  And again, I'm asking questions

23    regarding employees who use Exhibit 3.  All right?

24        A.    Right.  The time cards that are turned in to

25    our office, we can access those.  We can ask an

**EXHIBIT 4**
**-13-**

18



1    associate to see their time card.  And customers in some

2    cases have copies of the time cards and we can ask them

3    to see the time card.

4        MR. QUALLS:  Could you read back that response

5    for me, please.

6        (Whereupon the record was read as requested.)

7    Q.    BY MR. QUALLS:  Do employees who use Exhibit 3

8    for their time cards also submit hard copy time cards?

9    A.    Sometimes.

10    Q.    And some employees don't do so; is that

11    correct?

12    A.    Right.

13    Q.    For employees who submit Exhibit 3 as their

14    time card electronically, are those employees also

15    required to submit a hard copy time card?

16    A.    They're not required to.

17    Q.    For employees who submit Exhibit 3

18    electronically, are customers also required to maintain

19    a time card for that employee?

20    A.    We'd like them to.  They're not required to.

21    Q.    Have you ever tried to retrieve meal period

22    information for an employee who has submitted a time

23    card such as Exhibit 3?

24    A.    I have not.

25    Q.    Have you ever directed anyone to do so?

**EXHIBIT 4**
**-14-**

KIM HANS



1       A.    No.

2       Q.    To your knowledge has anyone ever tried to do

3    so?

4       A.    I don't know.

5       Q.    Do you know if after the information set forth

6    on Exhibit 3 is entered electronically by an employee

7    whether or not Adecco retains meal period information

8    electronically?

9       A.    Ask me again.

10      Q.    Sure.

11      A.    I think we covered this question, but I might

12   be wrong.  That's why I'm confused.

13      Q.    All right.  Maybe we did.  But I'm trying to

14   make sure I did.

15      A.    Okay.

16           MR. QUALLS:  Could you read back the question,

17   please.

18           (Whereupon the record was read as requested.)

19           THE WITNESS:  No.

20      Q.    BY MR. QUALLS:  Once the meal period

21   information is entered electronically, is it then

22   deleted?

23           MR. BARKER:  The question is vague and

24   ambiguous.  Assumes facts that are incorrect.

25      Q.    BY MR. QUALLS:  You can answer.

**EXHIBIT 4**
-15-

KIM HANS



1      A.    I would say no.

2      Q.    All right.  Perhaps I'm confused.  Let me ask

3   you this question.  Let's turn our attention to Exhibit

4   3, again.  All right?

5      A.    Yes.

6      Q.    This is a hard copy of what you would see if

7   you -- if an employee enters their time electronically.

8      A.    Yes.

9      Q.    A screen?

10          MR. BARKER:  What is?  I'm sorry?

11          MR. QUALLS:  Exhibit 3.

12          MR. BARKER:  You're saying does the screen

13   show all of this same --

14          MR. QUALLS:  Yes.

15          MR. BARKER:  Exactly the same as Exhibit 3?

16          MR. QUALLS:  Yes.

17          THE WITNESS:  No.

18      Q.    BY MR. QUALLS:  All right.  The screen entry

19   format is different; is that right?

20      A.    Yes.

21      Q.    All right.  The format for entry of time card

22   information electronically provides for entry of

23   information regarding meal periods; is that correct?

24      A.    Ask me again.

25      Q.    The format for entry of data electronically,

**EXHIBIT 4**
**-16-**

21

KIM HANS

BARKLEY
Court Reporters

1    time card data electronically, provides for entry of

2    meal period data, correct?

3        A.    The format for the electronic time card asks

4    for total hours.  So your meal period would be captured

5    in your total hours, but it doesn't outline the meal

6    period.

7        Q.    How would the meal period data be captured?

8        A.    On the paper time card.

9        Q.    Only on the paper time card; is that correct?

10       A.    That's right.

11       Q.    So if you were an employee and you are

12   entering your time card electronically, you are not

13   entering information regarding meal periods; is that

14   correct?

15       A.    You are entering it as it's captured in our

16   total hours, but it's not broken down by meal period.

17       Q.    All right.  How is it captured in our total

18   hours?

19       A.    Because you'll use this time card and you'll

20   put the -- what time you start, the time you log out for

21   lunch, what time you clock back in from your meal break,

22   the time you stop and your total.  The time capture

23   system asks for your daily totals.

24       Q.    So if you're using the time capture system to

25   enter your time card information --

**EXHIBIT 4**
**-17-**

22

KIM HANS


BARKLEY
Court Reporters

1      A.    Yes.

2      Q.    -- you enter the time your shift begins; is

3   that correct?

4      A.    No.  You enter your daily total.

5      Q.    All right.  You enter a daily total of hours

6   worked; is that right?

7      A.    Correct.

8      Q.    So you would enter, for example, eight hours?

9      A.    Exactly.

10     Q.    All right.  What other data do you enter other

11  than your total hours worked?

12     A.    Your assignment number and your -- I think

13  it's the last four digits of your Social Security

14  number.

15     Q.    Anything else?

16     A.    I don't believe so.

17     Q.    Is any data entered regarding meal periods

18  taken?

19     A.    Only as part of the summary of the total hours

20  that you're indicating on a daily basis.

21     Q.    Does the summary depict the fact that a meal

22  period was taken or not?

23     A.    Well, it's assumed that a meal period is

24  taken.

25     Q.    My question is more specific than that.  Does

**EXHIBIT 4**
**-18-**

23



1      Q.    What percentage of employees use ATS to submit

2    a time sheet?

3      A.    I don't know.

4      Q.    Are you able to estimate the percentage?

5      A.    I'm not.  It really would depend.

6      Q.    Do most employees use ATS?

7      A.    No.

8      Q.    How long has the ATS system been used by

9    Adecco?

10     A.    I don't know.

11     Q.    What is your best estimate of when Adecco

12   began using the ATS system?

13     A.    About four, five years ago.  I don't know.

14   Someone would have to verify that.

15     Q.    Are there any written instructions provided

16   employees on the subject of how to use the ATS system?

17     A.    No.  I believe it's self-explanatory.  It

18   walks them through.  It's an automated system.

19     Q.    Does the ATS system capture meal period

20   information?

21     A.    I don't believe so.

22     Q.    What information does the ATS system capture?

23     A.    I believe it's the same as the web time where

24   it captures daily hours.

25     Q.    Are employees who use the ATS system required

**EXHIBIT 4**
**-19-**

KIM HANS



1   to also prepare a hard copy of their time?

2       A.   Ideally we'd like them to do that.

3       Q.   My question is are they required to do so?

4       A.   In some cases we ask them to.  As far as

5   required, there are no consequences if they don't.

6       Q.   Are they told they must?

7       A.   Yes.

8       Q.   So all employees that use the ATS system are

9   told they also must keep a hard copy of a time card?

10      A.   Yes.

11      Q.   So employees who use the ATS system both use

12  the ATS system and fill out a paper time card; is that

13  right?

14      A.   They're supposed to.

15      Q.   Is there any monitoring system in place to

16  determine which employees who use the ATS system do not

17  fill out a paper time card?

18      A.   Not that I'm aware of.

19      Q.   Is there any enforcement of the requirement

20  that employees who use the ATS system also fill out a

21  paper time card?

22      A.   Not as a general practice.

23      Q.   To your knowledge does Adecco have any way of

24  knowing which employees -- withdraw the question.

25           Are clients required to keep a record of meal

**EXHIBIT 4**
**-20-**

28

BARKLEY
Court Reporters

1    periods for employees who use the ATS system?

2        A.    Our clients, we also ask our clients to sign

3    the time card and to keep a copy of the time card.

4        Q.    My question is more specific than that.  Are

5    clients --

6        A.    Our clients are not aware of whether our

7    associates are using the ATS system or using the web

8    time.  So I guess the answer would be no.

9        Q.    All right.

10       A.    Because that's out of their scope how the time

11   is being submitted from the associate.

12       Q.    Does the ATS system record when a daily work

13   shift begins?

14       A.    No.  We discussed that.  Just the hours.

15       Q.    Does the ATS system capture the same

16   information that's captured using the online system?

17       A.    I believe so.

18       Q.    Does it capture any other information?

19       A.    Not that I'm aware.

20       Q.    So the systems for purposes of capturing data

21   duplicate each other, correct?

22       A.    Right.  Two different methods.

23       Q.    Are reports prepared regarding data entered on

24   the ATS system?

25            MR. BARKER:  The question is vague and

**EXHIBIT 4**
-21-

BARKLEY
Court Reporters

KIM HANS

1     ambiguous.

2          Q.     BY MR. QUALLS:  You can answer.

3          A.     We receive -- we can access records that show

4     the total time that's input by our associates.

5          Q.     What are those reports called?

6          A.     Payroll register.

7          Q.     Does the payroll register indicate that the

8     information was submitted through the ATS system?

9          A.     I don't think so.

10         Q.     Is there any summary that you're aware of of

11    data submitted through the ATS system?

12         A.     I'm not aware of.

13         Q.     If you wanted to know what information was

14    submitted by an individual employee through the ATS

15    system specifically, would there be a way for you to

16    determine that?

17         A.     I don't know.

18         Q.     Are employees who use the ATS system told in

19    writing that they are required to also keep a hard copy

20    time card?  Withdraw the question.  Restate it.

21               Are employees who use the ATS system told in

22    writing that they are also to submit a hard copy time

23    card?

24         A.     They're not -- they're asked to submit a hard

25    copy to the client.  It does not indicate that they must

**EXHIBIT 4**
**-22-**

30

BARKLEY
Court Reporters

1    submit a hard copy to Adecco.

2        Q.    The hard copy time card goes to the client,

3    not Adecco; is that correct?

4        A.    We ask them to submit a copy of the time card

5    to Adecco.  We also ask them to submit a hard copy to

6    the client.  It's in writing that they need to give a

7    copy to the customer.

8        Q.    They have nothing in writing telling them that

9    they have to give a copy also to Adecco; is that

10   correct?

11       A.    I don't believe so.  Can I see the time card?

12       Q.    Sure.

13       A.    Customer copy, associate copy, customer copy.

14   No.  There's nothing that says Adecco copy.

15       Q.    Are associates told that the associate copy on

16   Exhibit 3 is to be given by the associate to Adecco?

17       A.    No.  We don't require they give us their copy.

18   We require a copy of the time card, so they could fax us

19   a copy of it, they can drop off their copy, they can

20   make a copy.

21       Q.    If one asks for it; is that correct?

22       A.    Right.

23       Q.    Unless someone asks for it, there's no

24   requirement that they submit their copy to Adecco on a

25   weekly basis?

**EXHIBIT 4**
**-23-**

31

KIM HANS

BARKLEY
Court Reporters

1      A.    We ask them to submit their copy to Adecco on

2    a weekly basis.

3      Q.    Okay.  And so the record is clear, that is

4    asked of employees who use the ATS system; is that

5    correct?

6      A.    It's asked of employees who use a paper time

7    card.

8      Q.    Okay.  Let's go back.  Forgive me if I haven't

9    made this clear.

10     A.    Okay.

11     Q.    I've been asking a series of questions

12   regarding the ATS system and I've tried my best to make

13   that clear in my questioning.  For purposes of employees

14   who use the ATS system, are those employees told that

15   they are required to submit a paper time card in

16   addition to using the ATS system?

17     A.    Yes.

18     Q.    Are they told that in writing?

19     A.    No.

20     Q.    Who tells the employees that they are to

21   submit a paper time card if they use the ATS system?

22     A.    The recruiters that hire the employees.

23     Q.    Anyone else?

24     A.    Whoever is hiring the employee.  It could be

25   the branch manager, it could be the recruiter.

**EXHIBIT 4**
**-24-**

32

KIM HANS

BARKLEY
Court Reporters

1    their payroll check?

2        A.    It should be.

3            MR. QUALLS:  Can you read back the last answer

4    please, or the one before the last answer.

5            (Whereupon the record was read as requested.)

6        Q.    BY MR. QUALLS:  What is a time capture tool?

7        A.    A time clock.  There's a couple different

8    methods available.  There's time clock, there's systems

9    where you can input your time into a third party tool,

10   there's electronic time clocks or manual time clocks.

11       Q.    Are the time capture tools tools of the

12   client?

13       A.    The time clocks are either provided by Adecco

14   or they could be the clients'.  There's a combination.

15       Q.    What percentage of employees use time clocks?

16       A.    I wouldn't be able to answer that.

17       Q.    Are you able to estimate?

18       A.    I don't know, honestly.  It depends.  It

19   really varies branch to branch and market to market.

20       Q.    Would it be more than half at any given time?

21       A.    It could be.

22       Q.    Do you know?

23       A.    I don't.  It depends on the -- you know, when.

24   And some years we might have more customers that have

25   clocks that utilize clocks and some years less.

**EXHIBIT 4**
-25-

40

BARKLEY
Court Reporters

1      Q.    Under what circumstances does Adecco provide a

2    time clock?

3      A.    As a service to the customer, it makes sense

4    based on their usage.

5      Q.    And what are the circumstances that make sense

6    to use a time card -- time clock?

7      A.    If there's quite a bit of volume where it's a

8    burden for supervisors to have to sign each individual

9    time card.

10     Q.    Any other circumstance?

11     A.    You know, honestly, it could just depend.

12   Sometimes it makes sense to use a time clock, but the

13   customer's facilities can't accommodate a time clock.

14     Q.    When the time clock is used is a hard copy

15   time card used to record time?

16     A.    Not usually, but it could be.

17     Q.    How is time captured on a time clock provided

18   by Adecco?

19     A.    Provided?

20          MR. BARKER:  Say that again.  I'm sorry.

21          MR. QUALLS:  Withdraw the question.  Restate

22   it.

23     Q.    You indicated earlier in some circumstances

24   Adecco provides the time clock?

25     A.    We can install our own time clock.  We can go

**EXHIBIT 4**
**-26-**

KIM HANS

**BARKLEY**
Court Reporters

1    into the marketplace and purchase a time clock, time

2    capture system, and install it in the customer's site or

3    we can have our associates utilize their time capture

4    system.

5        Q.    For now I'm going to ask questions regarding

6    time clocks provided by Adecco.

7        A.    Okay.

8        Q.    What kind of time clocks are provided by

9    Adecco?

10       A.    You mean the brands?

11       Q.    Yes.

12       A.    I believe the one that we often use is

13   Signify, but there's a variety of them.  I couldn't name

14   them all.

15       Q.    Do the time clocks provided by Adecco use hard

16   copy punch cards?

17       A.    Some do.

18       Q.    Is there some other way the time clocks

19   provided by Adecco record time other than punching on a

20   hard copy?

21       A.    They could have a swipe card.

22       Q.    Any other way?

23       A.    Thumbprint.

24       Q.    Thumbprint?

25       A.    Uh-huh.

**EXHIBIT 4**
-27-

KIM HANS

BARKLEY
Court Reporters

1    Q.    Any other way?

2    A.    I can't think of anything.

3    Q.    When a hard copy time card is used, how are

4    those time cards submitted by the employees to Adecco?

5    A.    You're referring to the punch clock time?

6    Q.    Yes.

7    A.    Through a variety of ways.  Adecco could come

8    by the client's site and take copies of the time cards.

9    The customer could fax them to our office.

10    Q.    At some point those time cards arrive at

11    Adecco data input center; is that correct?

12    A.    Right.  Or the branch, they data input

13    themselves.

14    Q.    Do the punch cards contain meal period data?

15    A.    It would show the times they clocked in and

16    clocked out, so yes.

17    Q.    Does the punch card data -- withdraw the

18    question.

19          Is the punch card data inputted into any

20    system once it is -- once it has arrived at an Adecco

21    branch?

22    A.    We would input through the time.adecco.com.

23    Q.    Same system you described earlier?

24    A.    Yes.

25    Q.    Does that inputting of data include input of

**EXHIBIT 4**
**-28-**

43

KIM HANS



# EXHIBIT 5

Daniel H. Qualls, Bar No. 109036
Robin G. Workman, Bar No. 145810
QUALLS & WORKMAN, LLP
244 California Street, Suite 410
San Francisco, CA 94111
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

David Sanford, D.C. Bar No. 457933
Meenoo Chahbazi, CA Bar No. 233985
SANFORD, WITTELS & HEISLER, LLP
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776

Grant Morris, D.C. Bar No. 926253
LAW OFFICES OF GRANT E. MORRIS
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile: (202) 742-7776

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVOTNAE GOLDSBY, AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> vs. <br><br> ADECCO, INC, and DOES 1 through 100, inclusive, <br><br> Defendants. | No.  CV 07 5604 MMC <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **DATE:**   **August 15, 2008** <br> **TIME:**   **9:00 am** <br> **CTRM:**   **7** <br> **JUDGE:**   **Hon. Maxine M. Chesney** |

1

## TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO
PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES.................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION .................2

I.      STATEMENT OF ISSUES TO BE DECIDED .......................................2

II.     STATEMENT OF FACTS .............................................................2

        A.      Plaintiff's Propounded Interrogatories and Defendant's Responses ..........2

        B.      Plaintiff's Attempts to Depose ADECCO and Continue Discovery ..........7

        C.      Plaintiff's Unsuccessful Meet and Confer Attempts ......................9

III.    ARGUMENT ...........................................................................9

        A.      Plaintiff's Interrogatories Are Within Scope Of Permitted Discovery.......9

        B.      The Supreme Court Recognizes The Right to Pre-Certification
                Discovery of Putative Class Member Contact Information ......................10

        C.      Privacy Objections Do Not Bar Plaintiff's Discovery ...............................11

        D.      Production of Class Members' Contact Information Is Not
                Burdensome ........................................................................12

III.    CONCLUSION .......................................................................13

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page(s)

### CASES

Bailey v. Ameriquest Mortg. Co., 2002 U.S. Dist. LEXIS 1363 (D. Minn. 2002) .....10, 11

Barnes v. Julien J. Studley, Inc., 1989 U.S. Dist. LEXIS 18349 (D. D.C. 1989).............10

Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938) ........................................11

Hammond v. Lowe's Home Ctrs., Inc., 216 F.R.D. 666 (D. Kan. 2003)............................9

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)...............................10

Miklos v. Golman-Hayden Cos., Inc., 2000 U.S. Dist. LEXIS 22352 (S.D. Ohio
    2000) ........................................................................11

Oppenheimer Fund v. Sanders, 437 U.S. 340 (1978) ........................................9

Pioneer Electronics (USA) Inc. v. Superior Court, 40 Cal. 4th 360 (2007) .....................11

Puerto v. Superior Court, 158 Cal. App. 4th 1242 (2008)............................11, 12

Tucker v. Labor Leasing, Inc., 155 F.R.D. 687 (M.D. Fla. 1994)....................................11

United States v. Cook, 795 F.2d 987 (Fed. Cir. 1986) ........................................10

Wallman v. Tower Air, Inc., 189 F.R.D. 566 (N.D. Cal. 1999) ...............................10

Whitworth v. Chiles Offshore Corp., 1992 U.S. Dist. LEXIS 17844 (E.D. La.
    1992) ........................................................................10

### STATUTES

Federal Rules of Civil Procedure, Rule 26 ........................................7

California Construction Code, Article I, § 1 ........................................12

Federal Rules of Civil Procedure, Rule 26 (b) (1) ........................................9

Federal Rules of Civil Procedure, Rule 30(b)(6) ........................................7, 8

Federal Rules of Civil Procedure, Rule 37(a)(1) ........................................2, 7, 9

## NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO

## PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES

TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 15, 2008 at 9:00 a.m. or as soon thereafter as the matter can be heard in Courtroom 7 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Shavotnae Goldsby (Plaintiff) will move the above-entitled court for an order compelling Defendant Adecco, Inc., (ADECCO) to provide further responses to Plaintiff's First Set of Special Interrogatories and overrule objections interposed to said discovery requests as set forth in Defendants' discovery responses. Good cause exists for the order required, as information sought is within the scope of permitted discovery. Any objections raised by Defendant are without merit.

This motion will be based on the Memorandum of Points and Authorities filed herewith, the Declaration of Daniel H. Qualls filed herewith, the complete files and records in this action, and such other argument and documents as may be presented at the hearing on this Motion.


Dated: July 3, 2008                    QUALLS & WORKMAN, L.L.P.


By: _____/S/_____
    Daniel H. Qualls
    Attorneys for Plaintiff and all others similarly
    situated

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

### I.    STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Fed. R. Civ. P. 37(a)(1), Plaintiff brings this motion to compel for Defendant ADECCO's failure to provide full and complete responses to Plaintiff's First Set of Special Interrogatories.  Defendant objected to Plaintiff's interrogatories on the grounds of relevance, that Defendant cannot be forced to disclose the requested information prior to this Court's determination on class certification, that the requested information violates the right to privacy, and that disclosure is too burdensome.

### II.    STATEMENT OF FACTS

Plaintiff is a former hourly employee of Defendant.  While employed by ADECCO, Plaintiff contends she periodically failed to receive meal period breaks as required by California law.  Plaintiff contends ADECCO maintains employee records depicting when hourly employees did not receive meal period breaks.  Plaintiff contends ADECCO did not pay Goldsby an additional hour of compensation for missed meal period breaks.  Plaintiff's employment with ADECCO terminated on December 26, 2006.  Plaintiff filed a Class Action Complaint in California state court for violations on July 26, 2007.[1]  Plaintiff's Complaint defines the class of employees she seeks to represent as:  persons paid on an hourly basis for whom ADECCO records depict a meal period not taken who did not receive compensation payment by ADECCO for lack of said meal period.[2]  Plaintiff served the Complaint on ADECCO on August 17, 2007.[3]

### A.    Plaintiff's Propounded Interrogatories and Defendant's Responses

On September 4, 2007, Plaintiff served her first sets of special interrogatories on ADECCO.[4]  ADECCO served its responses on November 1, 2007.[5]  The Special Interrogatories propounded by Plaintiff with Defendant's responses are set forth as follows:

---

[1] Declaration of Daniel H. Qualls In Support Of Plaintiff Shavotnae Goldsby's Motion To Compel Further Responses to Plaintiff's First Set of Special Interrogatories ("Qualls Decl.") ¶ 2, EX A.
[2] Id. at ¶ 10.
[3] Id., Proof of Service of Summons.
[4] Qualls Decl., ¶ 3, EX. B.
[5] Qualls Decl., ¶ 4, EX C.

**EXHIBIT 5**
-33-

**SPECIAL INTERROGATORY NO. 1**

Identify the name, address, e-mail address AND telephone number of all persons employed by YOU in California [between] July 26, 2003 and the present paid on an hourly basis for whom ADECCO records depict a meal period not taken. (The terms "YOU," "YOUR" or "YOURS" refer to ADECCO and, if applicable, the agents, employees, officers, and directors of same or of any subsidiary or divisions thereof, and their attorneys and those persons employed by their attorneys.) (As used herein, the term "ALL" is synonymous with "ANY" and the term "OR" means "AND/OR.")

**RESPONSE TO SPECIAL INTERROGATORY NO. 1**

Defendant objects to this interrogatory on the grounds that it seeks information which is not relevant to the subject matter involved in the pending action, and which is not reasonably calculated to lead to the discovery of admissible evidence; that it is overbroad, burdensome, and oppressive; that it calls for information that is protected by the right of privacy; that it is compound; that it is vague and ambiguous in that it cannot be ascertained what is meant by the phrase "depict a meal period not taken;" and that it is premature in that it seeks information concerning potential class members prior to class certification.

Defendant further objects to this interrogatory on the grounds that it improperly seeks information pertaining to liability and damages. This case is presently in the pre-certification discovery phase. Questions pertaining to liability and damages issues are unduly oppressive, harassing, and burdensome. Plaintiff will have the opportunity to propound discovery on liability and damages issues if the proposes [sic] classes are certified. However, if Defendant is subjected to such discovery prior to class certification, it will be forced to incur the burdens of a collective action before it has been determined by the Court that it is appropriate to proceed by way of a collective action.

**SPECIAL INTERROGATORY NO. 2**

Identify the period of employment for each person identified in response to Special Interrogatory No. 1.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2**

Defendant objects to this interrogatory on the grounds that it seeks information which is not relevant to the subject matter involved in the pending action, and which is not reasonably calculated to lead to the discovery of admissible evidence; that it is overbroad, burdensome, and oppressive; that it calls for information that is protected by the right of privacy; that it is compound; that it is vague and ambiguous in that it cannot be ascertained what is meant by the phrase "period of employment;" and that it is premature in that it seeks information concerning potential class members prior to class certification.

Defendant further objects to this interrogatory on the grounds that it improperly seeks information pertaining to liability and damages. This case is presently in the pre-certification discovery phase. Questions pertaining to liability and damages issues are unduly oppressive, harassing, and burdensome. Plaintiff will have the opportunity to propound discovery on liability and damages issues if the proposes [sic] classes are certified. However, if Defendant is subjected to such discovery prior to class certification, it will be forced to incur the burdens of a collective action before it has been determined by the Court that it is appropriate to proceed by way of a collective action.

**SPECIAL INTERROGATORY NO. 3**

Identify the number of persons employed by YOU in California between July 26, 2003 AND the present paid on an hourly basis for whom ADECCO records depict a meal period not taken.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3**

Defendant objects to this interrogatory on the grounds that it seeks information which is not relevant to the subject matter involved in the pending action, and which is not reasonably calculated to lead to the discovery of admissible evidence; that it is overbroad, burdensome, and oppressive; that it calls for information that is protected by the right of privacy; that it is compound; that it is vague and ambiguous in that it cannot be ascertained what is meant by the phrase "period of employment;" and that it is premature in that it seeks information concerning potential class members prior to class certification.

1    Defendant further objects to this interrogatory on the grounds that it improperly seeks

2   information pertaining to liability and damages. This case is presently in the pre-certification

3   discovery phase. Questions pertaining to liability and damages issues are unduly oppressive,

4   harassing, and burdensome. Plaintiff will have the opportunity to propound discovery on liability

5   and damages issues if the proposes [sic] classes are certified. However, if Defendant is subjected

6   to such discovery prior to class certification, it will be forced to incur the burdens of a collective

7   action before it has been determined by the Court that it is appropriate to proceed by way of a

8   collective action.

9    Subject to and without waiving these objections, Defendant responds as follows: During a

10   typical month, Adecco has approximately 10,000 employees that are assigned to work for

11   Adecco's clients in California.

12   **SPECIAL INTERROGATORY NO. 4**

13    Identify ALL persons employed by YOU in California paid on an hourly basis between

14   July 26, 2003, AND the present who complained to YOU REGARDING the absence of meal

15   period breaks. (As used herein, the term "REGARDING" means relating to, referring to,

16   pertaining to, reflecting, substantiating, evidencing, constituting, or in any manner whatsoever

17   logically or factually connected with the matter referenced, whether in whole or in part.)

18   **RESPONSE TO SPECIAL INTERROGATORY NO. 4**

19    Defendant objects to this interrogatory on the grounds that it seeks information which is

20   not relevant to the subject matter involved in the pending action, and which is not reasonably

21   calculated to lead to the discovery of admissible evidence; that it is overbroad, burdensome, and

22   oppressive; that it calls for information that is protected by the right of privacy; that it is

23   compound; that it is vague and ambiguous in that it cannot be ascertained what is meant by the

24   term "complained" and the phrase "absence of meal breaks;" and that it is premature in that it

25   seeks information concerning potential class members prior to class certification.

26    Defendant further objects to this interrogatory on the grounds that it improperly seeks

27   information pertaining to liability and damages. This case is presently in the pre-certification

28   discovery phase. Questions pertaining to liability and damages issues are unduly oppressive,

1  harassing, and burdensome. Plaintiff will have the opportunity to propound discovery on liability

2  and damages issues if the proposes [sic] classes are certified. However, if Defendant is subjected

3  to such discovery prior to class certification, it will be forced to incur the burdens of a collective

4  action before it has been determined by the Court that it is appropriate to proceed by way of a

5  collective action.

6  **SPECIAL INTERROGATORY NO. 5**

7       Identify the number of persons employed by YOU in California between July 26, 2003 and

8  the present, paid on an hourly basis.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 5**

10       Defendant objects to this interrogatory on the grounds that it seeks information which is

11  not relevant to the subject matter involved in the pending action, and which is not reasonably

12  calculated to lead to the discovery of admissible evidence; that it is overbroad, burdensome, and

13  oppressive; that it calls for information that is protected by the right of privacy; that it is

14  compound; that it is vague and ambiguous in that it cannot be ascertained what is meant by the

15  phrase "employed by YOU;" and that it is premature in that it seeks information concerning

16  potential class members prior to class certification.

17       Defendant further objects to this interrogatory on the grounds that it improperly seeks

18  information pertaining to liability and damages. This case is presently in the pre-certification

19  discovery phase. Questions pertaining to liability and damages issues are unduly oppressive,

20  harassing, and burdensome. Plaintiff will have the opportunity to propound discovery on liability

21  and damages issues if the proposes [sic] classes are certified. However, if Defendant is subjected

22  to such discovery prior to class certification, it will be forced to incur the burdens of a collective

23  action before it has been determined by the Court that it is appropriate to proceed by way of a

24  collective action.

25       Subject to and without waiving these objections, Defendant responds as follows: During a

26  typical month, Adecco has approximately 10,000 employees that are assigned to work for

27  Adecco's clients in California.

28

MOTION TO COMPEL      -6-     3153\MOTIONS\COMPELMOTSI1.DOC

**EXHIBIT 5**
-37-

### B.     Plaintiff's Attempts to Depose ADECCO and Continue Discovery

On September 10, 2007, Plaintiff served notices seeking to take the depositions of ADECCO's Persons Most Knowledgeable regarding 1) ADECCO policy and procedures regarding issuance of final payroll checks to terminated California employees; 2) ADECCO California meal period break policies; and 3) ADECCO meal period break record keeping practices and procedures.[6]  Plaintiff noticed the depositions to proceed on September 25, 2007.[7] ADECCO did not produce its Persons Most Knowledgeable on the noticed topics prior to serving Plaintiff with its interrogatory responses.

On November 5, 2007, four days after serving its responses, ADECCO removed this case to federal court.[8]  Consequently, the procedural maneuvering placed Plaintiff's ability to commence discovery on hold until the parties held a Fed. R. Civ. P. 26 Initial Disclosure Conference on February 1, 2008.[9]  Although Plaintiff just received the interrogatory responses detailed above at the time of removal, Plaintiff had not yet taken the deposition of ADECCO's representative on the noticed topics, and thus had no knowledge of ADECCO's meal period recordkeeping practices.  Removal to federal court coupled with the failure of ADECCO to produce its representative in a timely manner meant that Plaintiff did not have an opportunity at the time Plaintiff received ADECCO's responses to file a motion to compel, given the dictates of Rule 26.

Following the Rule 26 Conference, on February 5, 2008, Plaintiff served Fed. R. Civ. P. 30(b)(6) deposition notices seeking the same knowledgeable persons from ADECCO as previously noticed on September 10, 2007, in the state court action.[10]  This Court entered its Pretrial Scheduling Order on February 15, 2008, setting November 21, 2008, as the non-expert discovery cutoff date.[11]  Plaintiff initially noticed the depositions for September 25, 2007, re-noticed them for March 5, 2008, and then continued them again to occur on May 22, 2008 per

---

[6] Qualls Decl., ¶ 5, EX. D.
[7] Id.
[8] Qualls Decl., ¶ 6, EX E.
[9] Id.
[10] Qualls Decl., ¶ 7, EX. F.
[11] Qualls Decl. ¶ 8, EX. G.

1  ADECCO's request.    On February 29, 2008, ADECCO'S counsel first indicated that the March

2  5th date was unacceptable.[12]  The parties agreed to reschedule the deposition date for April 30,

3  2008, and then rescheduled again to May 22, 2008.[13]  As the May 22 date approached, ADECCO

4  again sought to reschedule the depositions for the fourth time.[14]  On June 4, 2008, Plaintiff's

5  counsel took the deposition of ADECCO's representative, Kim Hans, Vice President of

6  Operations, Southwest Division on the noticed topics.  At this deposition, Plaintiff learned the

7  nature of Defendant's recordkeeping practices for the first time:  the various methods by which

8  ADECCO hourly employees record their meal periods and the existence of ADECCO's records

9  thereof.[15]

10      Plaintiff learned that most of ADECCO's time records are electronic and thus easily

11  searchable.  This is the type of information sought by and is responsive to interrogatories seeking

12  putative class member contact information.  ADECCO maintains both a website, time.adecco.com

13  (TAC), and a telephone system called ATS wherein its employees enter their daily hours

14  worked.[16]  Neither the TAC site nor the ATS system provide any information regarding whether

15  an employee took a meal break period, as the data for both time entry methods reflects only the

16  total number of hours an employee worked.[17]  ADECCO employees who use paper time cards to

17  record their time typically submit their time cards to ADECCO, and then a designated employee

18  inputs the time card data into the TAC site.[18]  The website is the same one used by employees who

19  input time themselves, and does not reflect meal period break data.[19]  Another group of ADECCO

20  employees use hard copy punch cards and a time clock at the worksite to record their time.[20]

21  ADECCO collects this information and inputs it into the TAC site, again without capturing any

22  data regarding meal period breaks.[21]  At other work sites where the employees use the client's own

23

24  [12] Qualls Decl., ¶ 9, EX H.
    [13] Id.
    [14] Id.
25  [15] Qualls Decl. ¶ 10, EX. I, June 4, 2008, Deposition of Kim Hans ("Hans Depo.") at 13:1-21, 17:11-18:3, 18:17-
    19:21, 21:25-23:7, 23:17-25:3, 26:22-27:24, 27:25-28:7, 33:9-12, 34:19-21, 36:6-9, 43:3-44:18, 47:3-14.
26  [16] Hans Depo., at 12:10-16, 13:4-7, Qualls Decl. EX I.
    [17] Hans Depo., at 14:10-21, 17:11-24, 26:22-27:24, 29:15-22, Qualls Decl. EX I.
27  [18] Hans Depo., 33:20-34:23, Qualls Decl. EX I.
    [19] Hans Depo., 36:6-9, 45:2-9, Qualls Decl. EX I.
28  [20] Hans Depo., 40:6-21, Qualls Decl. EX I.
    [21] Hans Depo., 43:19-44:4, Qualls Decl. EX I.

MOTION TO COMPEL                    -8-                 3153\MOTIONS\COMPELMOTSI1 DOC

EXHIBIT 5
-39-

1    time clock, some clients print out time clock data for ADECCO's input at the TAC site.[22]  In short,

2    ADECCO's record keeping practices ensure that the majority of employee time record data it

3    collects is maintained on two electronic systems. Neither system's records depict whether an

4    employee took a timely meal period break.

5        **C.**    **Plaintiff's Unsuccessful Meet and Confer Attempts**

6        As required by Fed. R. Civ. P. 37(a)(1) and L.R. 37-1(a), Plaintiff's counsel met and

7    conferred with Defendant's counsel via telephone on June 20 and 24, 2008, to attempt to resolve

8    the parties' differences regarding production of the putative class members' contact information

9    and the related information Plaintiff requested via interrogatories.  These attempts were

10   unsuccessful.[23]  Accordingly, Plaintiff now brings this motion to compel ADECCO's further

11   responses to the interrogatories.

12           **III.**    **ARGUMENT**

13       **A.**    **Plaintiff's Interrogatories Are Within Scope Of Permitted Discovery**

14       ADECCO first objects to Plaintiff's interrogatories on the basis that the information sought

15   is both irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

16   Parties in a civil action may obtain discovery of any non-privileged information that is "relevant to

17   the subject matter involved in the pending action. . ." or is "reasonably calculated to lead to the

18   discovery of admissible evidence" at trial. Fed. R. Civ. P. 26 (b) (1) (Rule 26).  Courts broadly

19   construe the scope of discovery.  Oppenheimer Fund v. Sanders, 437 U.S. 340 (1978).  A court

20   should consider a request for discovery relevant if there is any possibility that the information

21   sought may be relevant to the claim or defense of any party. Hammond v. Lowe's Home Ctrs.,

22   Inc., 216 F.R.D. 666, 670 (D. Kan. 2003).  A court therefore should allow a request for discovery

23   unless it is clear that the information sought can have no possible bearing on the claim or defense

24   of a party.  Id.

25       Plaintiff's Complaint alleges claims under the California Labor Code for Defendant's

26   failure to provide meal period breaks and compensation for missed meal period breaks on behalf

27

28   _____

[22] Hans Depo., 48:3-18. Qualls Decl. EX H.
[23] Qualls Decl. ¶ 11.

MOTION TO COMPEL        -9-        3153\MOTIONS\COMPELMOTSI1.DOC

**EXHIBIT 5**
**-40-**

1  of herself and similarly situated ADECCO employees. To proceed. Plaintiff must make a

2  threshold showing that her claims give rise to predominant issues common to the class she seeks

3  to represent. Plaintiff's request for the names and addresses of ADECCO employees is within the

4  scope of permitted discovery because the information sought will enable Plaintiff to ascertain and

5  establish that Plaintiff and such employees are similarly situated. The scope of Rule 26 is not

6  limited by the Rule 23 proceeding. This objection is without merit.

7  **B.      The Supreme Court Recognizes The Right to Pre-Certification Discovery of
   Putative Class Member Contact Information**

8

9          ADECCO further objected on the ground that Plaintiff improperly seeks information

10  regarding liability and damages prior to class certification. Class certification is not a preliminary

11  requirement to the release of putative class members' contact information. In Hoffmann-La Roche

12  Inc. v. Sperling, 493 U.S. 165 (1989), the Supreme Court upheld a discovery order requiring the

13  defendant to provide the names and addresses of potential parties prior to authorization to proceed

14  as a representative action or class certification. Id. at 170. "[T]he Supreme Court did not require a

15  class certification prior to production of the list. It first ruled that production of the list of co-

16  workers was proper." Bailey v. Ameriquest Mortg. Co., 2002 U.S. Dist. LEXIS 1363 (D. Minn.

17  2002) ("The District Court was correct to permit discovery of the names and addresses of the

18  discharged employees."). As explained "[i]n general, at the precertification stage, discovery in a

19  putative class action is limited to certification issues (citation omitted) . . . However, the

20  merits/certification distinction is not always clear. Facts relevant to the class action determination

21  and definition may largely be the same as those relevant to the merits of the case." (Citation

22  omitted). Accordingly, "[a] District Court should be chary of restricting communications with

23  class members, and should do so only upon a 'clear record and specific findings that reflect a

24  weighing of the need for a limitation and the potential interference with the rights of the parties.'"

25  (citation omitted). Barnes v. Julien J. Studley, Inc., 1989 U.S. Dist. LEXIS 18349, 5-6 (D. D.C.

26  1989).

27          Courts likewise affirm the right to pre-class certification discovery of potential class

28  member names and addresses in cases proceeding under Rule 23. Whitworth v. Chiles Offshore

MOTION TO COMPEL                    -10-              3153\MOTIONS\COMPELMOTS\1.DOC

**EXHIBIT 5**

1   Corp., 1992 U.S. Dist. LEXIS 17844 (E.D. La. 1992); Wallman v. Tower Air, Inc., 189 F.R.D.

2   566, 569 (N.D. Cal. 1999). (See, also, United States v. Cook, 795 F.2d 987 (Fed. Cir. 1986) (suit

3   against United States seeking liquidated damages for failure to pay overtime wages; pre-

4   authorization discovery order granted compelling defendant to disclose names and address of other

5   federal firefighters and law enforcement personnel); Bailey v. Ameriquest Mortg. Co., supra (pre-

6   authorization discovery of names and addresses of potential plaintiffs in FLSA overtime pay case

7   allowed); Miklos v. Golman-Hayden Cos., Inc., 2000 U.S. Dist. LEXIS 22352 (S.D. Ohio 2000)

8   (plaintiff's pre-authorization motion to compel production of names and addresses of potential

9   party employees of defendant in FLSA wage proceeding granted); Tucker v. Labor Leasing, Inc.,

10  155 F.R.D. 687 (M.D. Fla. 1994) (plaintiff's pre-authorization motion to compel seeking names of

11  all employees of defendant who were due overtime compensation granted)). The clear weight of

12  authority on pre-certification production of putative class members' contact information is in favor

13  of Plaintiff.

14       **C.    Privacy Objections Do Not Bar Plaintiff's Discovery**

15       A federal court exercising diversity jurisdiction must apply the substantive law of the state

16  in which the court sits. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Accordingly, this

17  Court must look to California law to determine the merit of ADECCO's refusal to provide the

18  contact information of putative class members based on the right to privacy. California courts

19  confirm that there is no basis for this assertion.

20       The California Supreme Court in Pioneer Electronics (USA) Inc. v. Superior Court, 40 Cal.

21  4th 360 (2007), affirmed that no violation of the right to privacy occurs when a defendant releases

22  putative class members' contact information. In Pioneer, the Supreme Court observed: "Contact

23  information regarding the identity of potential class members is generally discoverable, so that the

24  lead plaintiff may learn the names of other persons who might assist in prosecution of the case.

25  Such disclosure involves no revelation of personal or business secrets, intimate activities, or

26  similar private information, and threatens no undue intrusion into one's personal life…" Id. at

27  373. Here, Plaintiff requires the same discovery to obtain evidence from a sampling of putative

28

1    class members to support a motion for class certification. Given the instruction of the Pioneer

2    court, ADECCO has no basis for its refusal to produce the information requested.

3       In Puerto v. Superior Court, 158 Cal. App. 4th 1242 (2008), the most recent California case

4    addressing the question of discovery of putative class member identity and contact information, the

5    Court held putative class member contact information is fully discoverable, unimpeded by notice

6    or 'opt-out' procedures. The court stated that the identification of potential witnesses is within the

7    scope of proper discovery under Cal. Code of Civ. Proc. §2017.010.[24] Id. at 1249. The court

8    explained that although the potential witnesses, who also worked for the employer, possess a

9    legitimate expectation that the employer will not disclose their addresses and telephone numbers, it

10    is also reasonable to conclude that they might want to share this information with coworkers who

11    sought relief for violations of employment laws. Id. at 1252-53. Hence, according to Puerto, the

12    requested information, while personal, was not particularly sensitive, there were no unusual

13    circumstances suggesting that the information should be restricted and the disclosure of the

14    requested addresses and telephone numbers would not significantly intrude on the potential

15    witnesses' right to privacy under Cal. Const., art. I, § 1. Id. at 1254-55. As a result, the Court

16    held that disclosure by Defendant of putative class member contact information did not require

17    prior notice to class members or an opt-out procedure to protect privacy rights. Id. at 1259.

18      **D.**    **Production of Class Members' Contact Information Is Not Burdensome**

19       As its last objection, ADECCO claims that production of the information sought is overly

20    burdensome. ADECCO did not elaborate as to what burden disclosure of the information might

21    cause. Plaintiff defined the class she sought to represent by entries on ADECCO's meal period

22    records, thereby tying the disclosure of putative class members' information to such records. After

23    Plaintiff's counsel deposed Ms. Hans on ADECCO's time record keeping practices, Plaintiff

24

---

25    [24] Cal. Code Civ. Proc. § 2017.010 provides in part: "any party may obtain discovery regarding any matter, not

26    privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the

   discovery of admissible evidence." While Fed. R. Civ. P. 26(b)(1) governs the scope of discovery in federal court, it is

27    similarly broad in language: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any

28    documents or other tangible things and the identity and location of persons who know of any discoverable matter." For the purpose of analyzing whether the disclosure of putative class members' contact information is within the scope of discovery, the Court should consider both statutes one and the same.

**EXHIBIT 5**
**-43-**

1  learned that ADECCO stores a large portion of its time records electronically.  Plaintiff further

2  learned that ADECCO's electronic record keeping systems, the time.adecco.com website and the

3  ATS telephone system, do not actually capture any data regarding meal period breaks, only the

4  total number of hours worked on a given day.  Consequently, ADECCO does not have to

5  undertake an arduous search to discover which of its electronically-stored time records belong to

6  putative class members, as virtually all of its electronic time records input via either the website or

7  the telephone system from the class period do not depict a meal period break.

8      All ADECCO must do to respond to Plaintiff's interrogatories is to search its systems for

9  the electronic time records from the class period and compile a list of people whose records match

10  the information requested in Special Interrogatory No. 1: the putative class.  From there,

11  ADECCO can produce contact information for each putative class member, as well as the other

12  requested information: the period of employment for each putative class member (No. 2) and the

13  number of people in the putative class (No. 3).  The information requested in No. 4 regarding

14  identification of the persons who complained to ADECCO regarding the absence of meal period

15  breaks likely overlaps with the persons identified as putative class members.  ADECCO also can

16  easily locate the information requested in No. 5 regarding the total number of persons employed by

17  ADECCO during the class period by searching its own electronic systems.  Clearly, ADECCO's

18  claim that the disclosure of this information is burdensome is also without merit.

19              **III.    CONCLUSION**

20      Accordingly, for the reasons stated, Plaintiff requests that the Court grant the motion and

21  order ADECCO to produce the requested information.

22

23  Dated:  July 3, 2008                QUALLS & WORKMAN, L.L.P.

24

25                        By: _____/S/_____
                              Daniel H. Qualls
26                            Attorneys for Plaintiff and all others similarly
                              situated
27

28

MOTION TO COMPEL              -13-        3153\MOTIONS\COMPELMOTSI1.DOC

**EXHIBIT 5**
**-44-**